United States District Court
Southern District of Texas
**ENTERED**
February 04, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ROBERT  GARCIA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:18-CV-00060 |
| | § | |
| LIEUTENANT HINOJOSA, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

In this *pro se* prisoner civil rights action under 42 U.S.C. § 1983, Plaintiff Robert Garcia, an inmate in the Stiles Unit of the Texas Department of Criminal Justice, raises an Eighth Amendment claim of excessive force against Lieutenant Humberto Hinojosa ("Defendant") arising from his time in the Nueces County Jail as a pretrial detainee. (D.E.  11).  Garcia also made claims against Nueces County and Sheriff Jim Kaelin, but he has voluntarily dismissed those defendants.  (D.E. 19, 20).  On October 10, 2018, Defendant filed a motion for summary judgment, to which Garcia has not responded. (D.E. 30).  Defendant contends that Garcia has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).  For the reasons stated herein, it is respectfully recommended that the motion for summary judgment be granted.

## I.   JURISDICTION

The Court has federal question jurisdiction over this civil action pursuant to 28 U.S.C. § 1331.

## II.   BACKGROUND

In April 2018, Garcia filed an amended complaint against Defendant, in which he alleges the following.  (D.E. 11).  On March 20, 2016, while he was a pretrial detainee in the Nueces County Jail, a staff member accused Garcia of threatening him while he was searching the dormitory.  (*Id.* at 4).  Garcia was taken to a holding cell and issued a disciplinary report for allegedly breaking a bench in the holding cell, although the bench was already broken when Garcia got there.  He was then escorted to a different holding cell, where he attempted to use the telephone, but the receiver was not working.  (*Id.*).  Out of frustration, Garcia slammed the telephone receiver against the wall.  (*Id.* at 5).  Defendant yelled at him, displayed his taser, and indicated that he was going to deploy the taser if Garcia did not lay down on the floor.  Garcia complied and laid face-down on the floor, but Defendant nonetheless deployed the taser into Garcia's back when he entered the cell.  Garcia was "lying face-down on the floor of [the] cell in a completely submissive position."  Defendant used the taser for 15 to 35 seconds.  The use of the taser was an unprovoked and excessive use of force that put Garcia at risk of having a heart attack.  (*Id.*).

Garcia concedes that he did not exhaust his administrative remedies, but states that exhaustion does not apply because, immediately following the incident, he was told by multiple Nueces County Jail staff members that there was no grievance system.  (*Id.* at 3).

Garcia seeks compensatory and punitive damages, court costs, attorney's fees, and injunctive relief. (*Id.* at 4).

On October 10, 2018, Defendant filed a motion for summary judgment, contending that Garcia failed to exhaust his administrative remedies by failing to file a prison grievance. (D.E. 30). First, Defendant argues that Garcia failed to timely respond to a Request for Admissions, and therefore has admitted that: (1) he requested a grievance officer regarding other concerns in November and December 2015; (2) he never filed an Inmate Complaint Form ("ICF") regarding the incident with Defendant; (3) he never complained in writing of any kind to jail personnel about the incident; and (4) he never initiated any grievance procedures against Defendant. (*Id.* at 10). Defendant argues that these admissions establish that the Nueces County Jail had a grievance procedure that Garcia was aware of, but that he failed to utilize it. (*Id.* at 11). Regardless of the admissions, Defendant argues that the evidence shows that Garcia failed to exhaust his administrative remedies because, even if Garcia was told by staff members that there was no grievance process, he had personal knowledge that the process existed because he had used it twice before. (*Id.* at 11, 13). Defendant further argues that Garcia received a copy of the Inmate Handbook, which discussed the grievance process, and that the grievance procedure was posted in each housing unit. (*Id.* at 12).

Defendant attached the following documents to the motion for summary judgment. (D.E. 30-1). On September 17, 2015, Garcia acknowledged that he was given a copy of the Nueces County Jail Inmate Rules and Regulations Handbook ("Handbook") and had read it. (*Id.* at 4). An excerpt from the Handbook indicated that inmates were allowed to

file a grievance any time they believed they had been subjected to a violation of their civil rights. (*Id.* at 7). The Handbook further noted that the proper grievance procedure was posted in each unit. (*Id.*).

On November 23, 2015, Garcia filed an ICF requesting a grievance officer because his unit's television had been taken away. (*Id.* at 8). On December 13, 2015, Garcia filed an ICF requesting a grievance officer because he had only received one haircut in three months and, "according to the [H]andbook," regular haircuts were necessary for sanitation and hygiene. (*Id.* at 9). Garcia filed several other ICFs for other reasons between October 2015 and July 2016. (*Id.* at 10-20).

Martin Arnold, the Assistant Chief Deputy of Jail Operation for the Nueces County Sheriff's Office, stated in an affidavit that the grievance procedure was outlined in the Handbook and posted in each housing unit in both English and Spanish. (*Id.* at 21-22). Arnold included a picture of the document posted in Garcia's housing unit, which outlined the steps to follow if an inmate had a grievance. (*Id.* at 23).

Jeffrey Pruitt, Defendant's counsel, stated in an affidavit that he served Garcia with a First Request for Admissions on June 21, 2018, and that Garcia did not respond. (*Id.* at 25). The request asked Garcia to admit or deny that: (1) he requested a grievance officer on November 23, 2015; (2) he requested a grievance officer on December 13, 2015; (3) he never filed an ICF regarding the incident with Defendant; (4) he never complained in writing to any jail personnel about the incident with Defendant; and (5) he never initiated grievance procedures against Defendant following the incident. (*Id.* at 28-30).

4

Garcia has not responded to the motion for summary judgment.

## III.  DISCUSSION

### a.  Summary Judgment Standard

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence, or evaluate the credibility of witnesses.  *Id.*  Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." *Anderson*, 477 U.S. at 250-51. In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).

### b.   Exhaustion

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The exhaustion requirement applies to both pretrial detainees and convicted prisoners. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2476 (2015). The procedural rules that must be followed in order to exhaust a claim are defined by the

specific prison's grievance process, not by the PLRA. *Jones v. Bock*, 549 U.S. 199, 218 (2007).

The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents. *Gates v. Cook*, 376 F.3d 323, 329 (5th Cir. 2004). Exhaustion is mandatory and requires that the available administrative remedy must be pursued to its conclusion. *Id.* Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process. *Booth v. Churner*, 532 U.S. 731, 734 (2001); *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). A prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a mandatory precondition to bringing suit in federal court. *Gonzalez v. Seal*, 702 F.3d 785, 787-88 (5th Cir. 2012). If the prisoner did not exhaust his administrative remedies, the suit must be dismissed. *Id.* at 788. Because exhaustion is an affirmative defense, inmates are not required to plead or demonstrate exhaustion in their complaints. *Jones*, 549 U.S. at 215.

A prison employee's statements can affect whether a remedy was "available" to a prisoner under § 1997e(a). *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010). Although the Fifth Circuit takes a strict approach to exhaustion, it does not "foreclose the possibility that prison officials' statements concerning administrative remedies can render such remedies unavailable." *Id.* However, the defining question is whether a prisoner has a way to discover the procedural rules governing their grievances. *Id.* When a prisoner has no means of verifying what prison officials have told him about the

grievance process, incorrect statements by those officials could make remedies unavailable. *Id.* Even where prison staff misrepresent the grievance process, that process is not rendered unavailable where there is evidence that the prisoner actually knew about the process or reasonably should have known about the process. *Davis v. Fernandez*, 798 F.3d 290, 296 n.2 (5th Cir. 2015).

A party may serve on any other party a written request to admit, for the purposes of the pending action only, the truth of any matters relating to facts or the genuineness of any described documents. Fed. R. Civ. P. 36(a)(1). A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection. Fed. R. Civ. P. 36(a)(3). A party's admission can be used in support of a motion for summary judgment. Fed. R. Civ. P. 56(c)(1)(A).

Here, summary judgment in favor of Defendant is appropriate because the evidence establishes that Garcia failed to exhaust his administrative remedies before filing suit, despite the fact that he knew, or reasonably should have known, about the grievance process. There is no dispute that Garcia did not file any grievance regarding the incident with Defendant. (*See* D.E. 11 at 3). Thus, the operative question is whether the grievance process was "unavailable" to Garcia because, as he alleges, officials from the Nueces County Jail told him that there was no grievance process. (*See id.*); *Dillon*, 596 F.3d at 268.

Even if officials told Garcia that there was no grievance process, the evidence indicates that the process was nonetheless available to him. First, Garcia failed to

8

respond to Defendant's Request for Admissions, and therefore admitted that he filed an ICF requesting a grievance officer on two occasions before the incident with Defendant. (D.E. 30-1 at 25-30); Fed. R. Civ. P. 36(a)(3). Even without Garcia's admission, Defendant submitted two ICFs filed by Garcia before the incident that requested a grievance officer, and Garcia has not responded or provided any evidence contradicting those documents. (*See* D.E. 30-1 at 8-9); *Little*, 37 F.3d at 1075 (stating that, in the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts). The November and December 2015 ICFs show that Garcia actually knew about the existence of the grievance process before the incident with Defendant because he requested a grievance officer, which is sufficient to show that the process was available to him regardless of what officials told him. *See Davis*, 798 F.3d at 296 n.2.

Second, even if Garcia did not actually know of the grievance process at the time of the incident, he reasonably should have known about it because he received a copy of the Handbook, which discussed the grievance process, and an outline of the grievance process was posted in his housing unit. (D.E. 30-1 at 4-7, 21-23). Because Garcia reasonably should have known about the grievance process, the process was available to him regardless of what officials told him. *See Davis*, 798 F.3d at 296 n.2. Accordingly, because the grievance process was available to Garcia and he failed to utilize it, he failed to exhaust his administrative remedies and his complaint must be dismissed.

## IV.  RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Defendant's motion for summary judgment (D.E. 30) be granted and Garcia's amended complaint (D.E. 11) be dismissed for failure to exhaust administrative remedies.

Respectfully submitted this 4th day of February, 2019.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).